## CRAGIN PRODUCTS CO. v. FITCH et al.

(Circuit Court of Appeals, Eighth Circuit. May 16, 1925. Rehearing Denied August 3, 1925.)

No. 6761.

Sales ⬦⟶71(4)—Contract held not one of absolute sale, but a requirement contract.

A contract made by offer by seller and acceptance by buyer for the sale of "approximately 1,800 barrels of * * * alcohol, * * * being your estimated consumption of this formula during one year from date, all of your supplies of this formula to be furnished by [seller]," *held* a contract for sale of buyer's requirement, and not one of absolute sale of 1,800 barrels.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action at law by the Cragin Products Company against F. W. Fitch and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Edmund S. Cummings, of Chicago, Ill. (William E. Miller, of Des Moines, Iowa, on the brief), for plaintiff in error.

J. G. Gamble, of Des Moines, Iowa (R. L. Read, of Des Moines, Iowa, on the brief), for defendants in error.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. This was an action at law in the District Court of the United States for the Southern District of Iowa by Cragin Products Company, a corporation, of Chicago, against F. W. Fitch Company, a corporation, of Des Moines, to recover dam-

ages for a breach of contract for the alleged purchase of 1,800 barrels of denatured alcohol. The trial was begun before Hon. Martin J. Wade, and at the close of the plaintiff's evidence the court directed a verdict for the defendant, and the case comes here upon alleged error in that respect.

The controlling question in the case is that of the proper construction of the contract. The plaintiff sues upon the theory that it is a contract for the sale of 1,800 barrels of 3 B formula alcohol, and that defendant breached the contract after receiving 568 barrels by refusing to order out more, excusing itself for so doing because the government had withdrawn its permit for the use of this alcohol. The defendant's contention is that the contract, properly construed, calls for the purchase of alcohol from the plaintiff to the extent of its manufacturing requirements, estimated at the time of the making of the contract to be approximately 1,800 barrels; that, such being the case, when its permit to use the alcohol was withdrawn, it had no further requirements within the time limits of the contract, and the contract thereby automatically became canceled.

The trial court adopted the defendant's contention, ruling that the contract was a requirement contract, and not an absolute contract of sale for a certain specific number of barrels. In this connection we are of opinion that the trial court concluded correctly. The language of the contract is:

"Cragin Products Co.,

"Distillers of Alcohol for Industrial Purposes,

"432 Postal Telegraph Building.

"Chicago, April 18, 1918.

"F. W. Fitch Company, Des Moines, Iowa:

"Under your guaranty to us that the alcohol covered by this contract will not be used in any degree in the production of beverages, we confirm sale to you to-day of denatured alcohol formula No. 3–B special as follows: Approximately 1,800 bbls. of 190 proof at 80c per gallon wine f. o. b. distillery del'd on cars at Chicago, being your estimated consumption of this formula during one year from date. All of your supplies of this formula to be furnished by Cragin Products Co.

"Above prices include good sound cooperage.

"This alcohol to be shipped via railway— as directed by you in about equal quantities monthly or as needed.

"Taxes.—Above price specified is for alcohol without including any tax. In case any internal revenue taxes are assessed at any time by the U. S. government on denatured alcohol, you are to pay any such taxes that may be assessed against the alcohol or raw materials at time shipments are made.

"Terms.—Net cash against documents. Cragin Products Co. shall not be responsible for losses resulting from delays in filling orders by reason of fires, strikes, embargoes, or any other causes beyond our control.

"This contract is assignable.

"Cragin Products Co.,
"Per [Signed] Frank J. Delaney,
"Gen'l Mgr.

"Accepted by
"[Signed]    F. W. Fitch Co.,
"Per F. W. Fitch.

"This cancels all previously dated contracts existing between F. W. Fitch Co. and the Cragin Products Co., covering alcohol, and it is understood and agreed that the barrels in which the alcohol is shipped shall be returned to Cragin Products Co. from time to time by the F. W. Fitch Co., by freight at a price of $1.75 each, if in good condition, f. o. b. Des Moines on cars. Sight draft to be attached to bill of lading covering your shipment of barrels, and said draft to be paid by the Cragin Products Co. on presentation.

＊        ＊        ＊        ＊        ＊

"A reduction of 5c per wine gallon will be allowed by the Cragin Products Co. on alcohol that is shipped in tank cars, the tank cars to be furnished by the Cragin Products Co., and the tank car rental to be paid by the Cragin Products Co.

"But in the event that the tank cars cannot be obtained by the Cragin Products Co. then the F. W. Fitch Co. is to have the privilege of shipping in barrels.

"Cragin Products Co.,
"Per [Signed] Frank J. Delaney,
"Gen'l Mgr.

"Accepted by
"[Signed]    F. W. Fitch Co.
"Per F. W. Fitch."

Now, if plaintiff was selling and defendant buying, absolutely, 1,800 barrels of alcohol, why at the outset did they say approximately 1,800 barrels? Again, why follow that up with the language: "Being your estimated consumption of this formula during one year from date." This latter provision of the contract is carefully and specifically worded, and not only embodies the estimated consumption, but the period of time during which it is to be consumed, and all appears

to relate back to the expression, "approximately 1,800 barrels." Then the following sentence is to be considered: "All of your supplies of this formula to be furnished by Cragin Products Co." That provision was calculated to protect the seller as against the then present estimate. Again, the provision for delivery: "As directed by you in about equal quantities, monthly or as needed."

Now defendant only took out 568 barrels during the year specified. I think in such case, assuming an absolute sale to have been made, the natural thing for the seller to do would be to demand the price promptly, but this was not done. A number of letters passed between the parties, the language of one of which, dated March 21, 1919, is significant:

"We assumed, of course, that from what we knew of your policy that you would want to dispose of your made-up stock before you commenced ordering very much of any alcohol forward. We, however, will arrange to extend your contract in 1919, viz. throughout this year, to suit the requirements of your business."

Now the estimated amount of alcohol had not been taken out during the year specified in the contract, but an unusual circumstance had intervened. The government had prohibited the defendant using the alcohol, at least for a time. In these circumstances the plaintiff comes forward with the proposition to "extend your contract in 1919, viz. throughout this year, to suit the requirements of your business," thus seeming to imply that the plaintiff had in mind an effort to extend the time of requirements because of the past interruption. While the contract is not as clear as it might be, we are inclined to the interpretation adopted by the trial court, and therefore are of the opinion that the case should be and is affirmed.